# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TROY D. MCNALLY,     )
                          )
          Petitioner,     )
                          )
        v.             )   Civil Action No. 12-1303-GMS
                          )
DAVID PIERCE, Warden, and   )
ATTORNEY GENERAL OF     )
THE STATE OF DELAWARE,   )
                          )
          Respondents.[1]   )

---

Troy D. McNally. *Pro se* petitioner.

Gregory E. Smith, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

---

## MEMORANDUM OPINION

_____**Nov 24**_____, 2015
Wilmington, Delaware

---

[1] Warden David Pierce has replaced former Warden Perry Phelps, and original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Troy D. McNally ("McNally"). (D.I. 3; D.I. 4) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As summarized by the Delaware Supreme Court in *McNally v. State*, 980 A.2d 364 (Del. 2009), the facts leading to his arrest and conviction are as follows:

> On the night of January 6, 2007, someone shot four .45 caliber bullets in the direction of 82 Strawberry Drive, Magnolia, Delaware. Stacey Smith was visiting her mother at 102 Strawberry Drive, the house next door. Smith and McNally dated in the past, and they have two children together. One bullet struck Smith's car. The other three bullets struck the house at 82 Strawberry Drive. Four people were inside 82 Strawberry Drive that night. From 102 Strawberry Drive, Smith and her mother heard a loud noise. They went outside and found a bullet hole in the left front fender of Smith's car. In a 911 telephone call, Smith identified McNally as the shooter and claimed that he tried to run her off the road earlier that day. No one at the scene saw the shooter or the shooter's vehicle, although many people heard loud noises that sounded like firecrackers or gunshots. McNally denied being in the area of the shooting, or possessing or firing a gun. The police did not recover a firearm.
>
> The police identified McNally as a suspect based on his relationship with Smith and the alleged driving encounter earlier on the evening of the shooting. Police found four .45 caliber shell casings on the street in front of 82 Strawberry Drive. They also found three .45 caliber shell casings in McNally's aunt's SUV, which McNally drove the night of the shooting. Police found GSR residue in that SUV and on McNally' hands. The State's ballistics expert, Carl Rone, determined that the shell casings found in the SUV and the street came from the same gun. Another expert, Elana Foster, testified that the evidence found on McNally's hands and in his aunt's SUV was gunshot residue. Foster testified that GSR on McNally's hands indicates that he either fired a gun, or was near a gun when it was fired, or came into contact with a person or object that had GSR on it.

*McNally*, 980 A.2d at 366.

In February 2007, McNally was indicted on twenty-three charges: ten counts of first degree reckless endangering; nine companion counts of possession of a firearm during the commission of a felony ("PFDCF"); one count of possession of a deadly weapon during the

commission of a felony ("PDWDCF"); two counts of criminal mischief; and one count of endangering the welfare of a child. (D.I. 14 at 1) After three different defense attorneys withdrew prior to trial, McNally went to trial with his fourth defense attorney on January 23, 2008. (D.I. 14 at 1) At the close of the State's evidence, McNally moved for a judgment of acquittal, which the Superior Court denied. *See State v. McNally*, 2011 WL 7144815, at *3 (Del. Super. Ct. Nov. 16, 2011). A Delaware Superior court jury convicted McNally of four counts of first degree reckless endangering (one count for each of the four people occupying 82 Strawberry Drive at the time of the shooting), four counts of PFDCF, and two counts of criminal mischief, and acquitted him of all the remaining charges. *See McNally*, 980 A.2d at 366. The Superior Court sentenced McNally to a total of thirty-eight years of Level V incarceration, suspended after twelve years[2] and five months for probation. The Delaware Supreme Court affirmed McNally's convictions and sentence on September 29, 2009. *See McNally*, 980 A.2d at 372.

In August 2010, McNally filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *See McNally*, 2011 WL 7144815 at *1. The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See McNally v. State*, 53 a.3d 302 (Table), 2012 WL 3552923 (Del. Aug. 20, 2012).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

---

[2]The twelve years were mandatory because of McNally's four firearm convictions.

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner

3

permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

4

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[3] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter,* 562 U.S. 86, 98-100 (2011). As recently explained by

---

[3]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

McNally's timely filed petition asserts the following four grounds for relief:[4] (1) trial and appellate counsel provided ineffective assistance; (2) there was insufficient evidence to support the verdict; (3) the admission of expert testimony regarding the gunshot residue and ballistics

---

[4]For ease of analysis, the court has renumbered two claims without altering the substance of the arguments contained therein: former claim four is now claim two, and former claim two is now claim four. To the extent McNally's documents titled "Newly Discovered Evidence" (D.I. 17; D.I. 24) and his "Motion to Supplement" (D.I. 25) both supplement his original arguments and assert new claims, the court will not consider the new claims (i.e., new ineffective assistance of counsel claims and a new "interracial violent crime" claim) because they do not relate back to the claims in the original petition. *See* Fed. R. Civ. P. 15(a),(c); *Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999)(finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective assistance of counsel claim asserted in the original timely habeas petition); *U.S. v. Thomas*, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case").

analysis violated McNally rights under the Confrontation Clause; and (4) McNally was denied his Sixth Amendment right to confront two witnesses who had been inside the home at 82 Strawberry Drive at the time of the shooting.

## A. Claim One: Ineffective Assistance of Counsel

In claim one, McNally contends that trial counsel was ineffective for failing to file a pre-trial suppression motion and for failing to challenge the sufficiency of the evidence after the jury's verdict. He also contends that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the verdict. On post-conviction appeal, the Delaware Supreme Court denied the arguments as meritless. As a result, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92

7

(3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Superior and Supreme Courts identified *Strickland* as governing McNally's instant ineffective assistance of counsel contentions. As such, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* to the facts of McNally's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Delaware Supreme Court's denial of McNally's ineffective assistance of counsel claims through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Ineffective assistance of trial counsel

McNally contends that trial counsel provided ineffective assistance by failing to move to suppress the evidence against him. In his Rule 61 affidavit, trial counsel explains that he did not file a suppression motion because he "did not believe there was a basis in the law to move for exclusion by the Court." (D.I. 15, State's Motion to Affirm in *McNally v. State*, NO.631, 2011, at Exh. D ¶5) The record demonstrates the reasonableness of this decision. For instance, although the most significant evidence was obtained from the car owned by McNally's aunt without a warrant, his aunt had consented to the search, and McNally presented nothing to challenge the validity of her consent. As such, trial counsel concluded there was no legal or factual basis to suggest that a motion to suppress this evidence would have been successful. *See*

8

*McNally*, 980 A.2d at 367. Second, the additional evidence was seized pursuant to a search warrant, and neither the record nor McNally indicates that there was a basis for challenging the validity of that warrant. Finally, trial counsel did object to the admission of the shell casing evidence during the trial because of chain of custody issues, but the trial court overruled the objection. (D.I. 15, State's Motion to Affirm in *McNally v. State*, No. 631, 2011, at Exh. D ¶5) All of these circumstances demonstrate that trial counsel's determination that he had no good faith basis to file a pre-trial suppression motion was a strategic decision based on a reasonable assessment of the evidence. Therefore, the Delaware Supreme Court reasonably applied *Strickland* in affirming the Superior Court' denial of this portion of claim one.

McNally also contends that trial counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions after the jury issued its verdict. Although the record reveals that McNally presented this ineffective assistance of counsel claim based on trial counsel's failure to raise a post-verdict insufficient evidence claim in his Rule 61 proceeding,[5] it is not entirely clear that the Delaware Supreme Court considered this particular

---

[5]The state court record contains McNally's form Rule 61 motion for postconviction relief. Ground One in his Rule 61 motion asserts "ineffective assistance of trial counsel," "see Memorandum of Law." (D.I. 15, State's Motion to Affirm, in *McNally v. State*, No. 631,2011, at Exh. C) Although the state court record does not contain the "Memorandum of Law" referenced in the Rule 61 motion, the record contains several of McNally's motions to amend the Rule 61 motion and motions for reconsideration that he filed after the Delaware Superior Court Commissioner issued his August 15, 2011 Report and Recommendation that the Rule 61 motion should be dismissed. In at least one of those motions, McNally describes his argument in "traditional" insufficient evidence terms by stating that "the guilty verdict on the remaining charges should be tested by the usual standard of whether a rational trier of fact, viewing the evidence in the light most favorable to the State could have found the essential element of PFDCF 4 counts . . ." (D.I. 15, Amendment of Motion in *State v. McNally*, ID No. 0701005246, dated August 19, 2011) Notably, the Superior Court did not address this contention when it adopted the Commissioner's Rep. & Rec. on November 16, 2011. *See McNally*, 2011 WL 7144815, at *1. McNally's "Opening Brief" in his postconviction appeal contains several statements challenging the sufficiency of the evidence supporting his convictions, which the Delaware Supreme Court also did not address in its opinion affirming the Superior Court's denial

9

claim on post-conviction appeal.[6] Nevertheless, given the "absence of any indication or state-law procedural principles to the contrary," the court will presume that the Delaware state courts adjudicated this particular ineffective assistance of trial counsel claim on the merits. *See Harrington*, 562 U.S. at 98-100.

In order to demonstrate that there was insufficient evidence to support a defendant's convictions, the defendant must satisfy the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.* at 26. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it

---

of the Rule 61 motion. (D.I. 15, Opening Brief, Case No. 631, 2011, at 8-11) Given these circumstances, the court concludes that McNally fairly presented his argument that trial counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence supporting his convictions.

[6]The record reveals that trial counsel filed a pre-verdict motion for judgment of acquittal, but nothing in the record indicates that trial counsel filed a motion for judgment of acquittal post-verdict. The premise of McNally's instant argument and his post-conviction ineffective assistance of counsel argument is that trial counsel failed to challenge the sufficiency of the evidence supporting his convictions. When considering McNally's Rule 61 motion, the Superior Court summarily dismissed the claim because trial counsel actually had moved for an acquittal at the close of the State's evidence. *See McNally*, 2011 WL 7144815, at *4. The Delaware Supreme Court affirmed that decision on post-conviction appeal. *See McNally*, 2012 WL 3552923, at *2. Since the Superior Court's denial of McNally's ineffective assistance of counsel claim was premised on the fact that trial counsel filed a motion for judgment of acquittal prior to the jury's verdict, it would appear that the Superior Court and the Delaware Supreme Court did not explicitly consider McNally's instant argument challenging the sufficiency of the evidence supporting his **convictions**.

does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

In order for McNally to be found guilty of the four counts of first degree reckless endangering under 11 Del. Code Ann. § 604, the State had to prove beyond a reasonable doubt that he recklessly engaged in conduct which created a substantial risk of death or physical injury to the four people inside 82 Strawberry Drive by firing a hand gun into that residence. In order for McNally to be found guilty of four counts of possession of a firearm during the commission of a felony under 11 Del. Code Ann. § 1447A, the State had to prove beyond a reasonable doubt that McNally did possess a firearm (handgun) during the commission of the four aforementioned felonies of first degree reckless endangering. Finally, in order for McNally to be found guilty of two counts of criminal mischief under 11 Del. Code Ann. § 811, the State had to prove beyond a reasonable doubt that McNally did intentionally cause damage in an amount of more than $1, 000 to electronics and the interior walls of a trailer belonging to Shelley Stanley and a 2006 Chrysler belonging to Stacy Smith.

In this proceeding, McNally's summary and conclusive assertion that he was prejudiced by trial counsel's failure to challenge the sufficiency of the evidence supporting his convictions does not satisfy the *Jackson* or *Strickland* standards. For instance, the jury was presented with the following evidence: (1) three bullets struck the house at 82 Strawberry Drive, and four people were inside that house at the time; (2) a bullet hole was found in the left front fender of Smith's car that was parked at 102 Strawberry Drive; (3) a ballistics analysis linking a casing from the scene to a casing found inside of the car McNally was using on the night of the incident; and (4) the door handle and steering wheel of that same car tested positive for gunshot residue, as did swabs from McNally's hands. *See McNally*, 980 A.2d at 366-67. At trial,

forensics expert Elana Foster testified that the residue on McNally's hands indicated that he either fired a gun, was near a gun when it was fired, or came into contact with a person or object that had gunshot residue on it. *Id.* During the trial, the mother of McNally's children, Stacy Smith, testified that McNally had attempted to run her car off the road prior to the shooting incident at Strawberry Drive. (D.I. 15, App. to State's Ans. Br. in *McNally v. State*, No. 183,2008 at B-2) She explained how she drove to her mother's house after the "running off the road" incident, and that she was in her mother's home when she heard a car drive down the road that sounded just like the car that had attempted to run her off the road. After hearing gunshots being fired in the street, she looked out the house window and saw a car's tail lights. *Id.* at B-3 to B-4. She explained how, after hearing the shots, she called the 911 operator to report the incident. *Id.* at B-16. She also explained how, although she told the 911 operator that McNally was the shooter, she was just speculating about the shooter's identity because she was still furious about McNally's earlier attempt to run her off her road. *Id.* She testified that she did not actually see the face of the shooter, but that she had assumed it was McNally.[7] *Id.*

Finally, the jury was presented with McNally's videotaped statement, wherein he admitted to driving the vehicle from which the evidence was obtained. *Id.* at B-76. He also admitted that he had cleaned the vehicle after he drove it. *Id.* When asked about the shells that were found in the car, he responded, "Aliens put them there." *Id.*

Viewing the aforementioned evidence in a light most favorable to the prosecution demonstrates that there was sufficient evidence from which a rational jury could have concluded that McNally committed the crimes of first degree reckless endangering, possession of a firearm during the commission of a felony, and criminal mischief. In turn, when the evidence is viewed

---

[7]The jury acquitted McNally of the charges relating to Stacy Smith.

in conjunction with the fact that the trial court denied trial counsel's pre-verdict motion for a judgment of acquittal, McNally cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to challenge the sufficiency of the evidence against him post-verdict. Given these circumstances, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in determining that trial counsel's failure to challenge the sufficiency of the evidence supporting his convictions did not amount to constitutionally ineffective assistance. Accordingly, the court will deny this portion of claim one for failing to satisfy § 2254(d).

### 2. Ineffective assistance of appellate counsel

Next, McNally contends that appellate counsel was ineffective for failing to present an appellate argument challenging the sufficiency of the evidence supporting his convictions. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[8] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

Having already determined that trial counsel's failure to challenge the sufficiency of the evidence supporting McNally's convictions did not amount to constitutionally ineffective assistance of counsel, the court similarly concludes that appellate counsel did not perform ineffectively for failing to raise the same meritless argument on direct appeal. Accordingly, the

---

[8]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

court will deny this portion of claim one for failing to satisfy § 2254(d), because the Delaware

Supreme Court reasonably applied *Strickland* when it denied his complaint about appellate

counsel on post-conviction appeal.

### B. Claim Two: Insufficient Evidence

In claim two, McNally contends that there was insufficient evidence to support his

convictions for first degree reckless endangering, possession of a firearm during the commission

of a felony, and criminal mischief. McNally did not present this claim to the Delaware Supreme

Court on direct appeal or post-conviction appeal.[9] At this juncture, Delaware Superior Court

Criminal Rule 61(i)(1) and (3) would bar McNally from presenting these issues to the Delaware

state courts in a new Rule 61 motion. *See* Del. Super. Ct. Crim. R. 61(i)(1)(establishing a one

year limitations period for filing a Rule 61 motion); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580

(D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because

Petitioner did not raise the claim in the proceedings leading to his conviction). Consequently,

McNally's insufficient evidence claim is procedurally defaulted, and the court cannot review its

merits absent a showing of cause and prejudice, or that McNally is actually innocent.

McNally attempts to establish cause for his default by blaming trial and appellate counsel

for not raising the insufficient evidence claim. An attorney's ineffective assistance may

---

[9]As discussed with respect to claim one, the court has determined that McNally presented his
claim regarding trial and appellate counsel's failure to challenge the sufficiency of the evidence
to the Delaware Supreme Court on post-conviction appeal. However, the fact that McNally
presented the argument that his attorneys were ineffective for failing to challenge the sufficiency
of the evidence does not satisfy the requirement that he must have fairly the presented the
underlying substantive insufficient evidence claim to the Delaware Supreme Court on post-
conviction appeal. *See Russi v. Rozum*, 2007 WL 1876533, at *3 (E.D. Pa. June 27,
2007)("Presenting a claim for ineffective assistance of trial counsel for failure to raise a
constitutional claim is not the same as raising the underlying claim itself and will not serve to
exhaust the underlying claim for purposes of federal habeas review.").

constitute cause for a procedural default, but only if the attorney's ineffectiveness amounts to a Sixth Amendment violation. *See Murray*, 477 U.S. at 488. In this case, McNally's attempt to blame trial and appellate counsel for his default is unavailing, because the court has already determined that counsels' failure to raise this argument did not amount to constitutionally ineffective assistance.

In the absence of cause, the court will not address the issue of prejudice. Moreover, the court cannot excuse McNally's default under the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. The alleged "newly discovered evidence" provided by McNally (D.I. 17; D.I. 24) does not trigger the miscarriage of justice exception because it is "evidence" that was available to him during his trial. Accordingly, the court will deny claim two as procedurally barred from federal habeas review.

### C. Claim Three: Confrontation Clause Violations With Respect to Expert Testimony

In claim three, McNally contends that his Sixth Amendment right to confront the witnesses against him was violated by the improper admission of expert testimony regarding the ballistic and gunshot residue analyses. The court will address McNally complaints about the different expert testimony separately.

#### 1. Ballistics Expert Testimony

The first portion of claim three contends that the ballistic expert's (Carl Rone) failure to remember the details of his analysis regarding the bullet casings deprived McNally of his right to cross-examine and confront witnesses under the Sixth Amendment. McNally presented this same argument to the Delaware Supreme Court on direct appeal, which denied the claim as

meritless.[10] Therefore, McNally will only be entitled to federal habeas relief for his ballistics expert testimony/Confrontation Clause argument if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." U.S. Const. amend. VI. One of the primary protections derived from the Confrontation Clause is the right to effective cross-examination of the State's witnesses. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004). In turn, one function of the constitutionally protected right of cross-examination is to "attack the witness' credibility" by revealing possible "biases, prejudice, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Notably, however, the Confrontation Clause guarantees only "an **opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(emphasis in original). Additionally, the "Confrontation Clause includes no guarantee that every witness will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Fensterer*, 474 U.S. at 21-22. Thus, when a witness suffers from memory loss, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness' testimony." *Id.*

---

[10]On direct appeal, McNally presented this argument as both a violation of Delaware Rule of Evidence 702 and as a violation of the "Confrontation Clause of the Constitution." (D.I. 15, Appellant's Op. Br. in *McNally v. State*, No. 183, 2008, at 7-11) In the instant petition, McNally specifically re-asserts his Confrontation Clause argument while vaguely referring to the state law evidentiary error. Since state law errors do not assert issues cognizable on federal habeas review, and since McNally does not specifically assert the alleged state law error as a ground for relief in the instant petition, the court will not address the state law error here.

Here, the Delaware Supreme Court's denial of McNally's instant argument was not

contrary to clearly established federal law, because that court cited to *Fensterer* when it denied

the argument as meritless. The Delaware Supreme Court's decision also involved a reasonable

application of clearly established federal law. In *Fensterer*, an expert analyzed hairs and opined

that they had been forcibly removed, but he could not recall which of three methods he used to

make that determination. *See Fensterer*, 474 U.S. at 17. In McNally's case, Rone, the ballistics

expert, testified that the casings from the scene and the casings found in the car McNally drove

had "similar markings" and were fired from the same weapon, but he could not recall precisely

which markings he compared or how those markings were unique to a particular firearm. *See*

*McNally*, 980 A.2d at 369. Because Rone was subject to cross-examination and disclosed his

inability to recall the basis of his opinion, Rone's testimony did not violate McNally's rights

under the Confrontation Clause. Accordingly, the court will deny this portion of claim three for

failing to satisfy § 2254(d).

**2. Gunshot Residue Expert Testimony**

Next, McNally contends that his Sixth Amendment right to confront the witnesses against

him was violated under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) when the trial

court allowed the State to present expert Elena Foster to testify about the gunshot residue

("GSR") test results without requiring the testimony of Michelle Barry, another lab employee

who was part of the chain of custody for GSR testing. Although the State asserts that the

Delaware Supreme Court adjudicated this argument on the merits (D.I. 14 at 14), the record

reveals that McNally presented this argument to the Delaware Supreme Court as an evidentiary

chain-of-custody issue under Delaware state law, not as a Confrontation Clause violation.[11] As a

result, McNally did not exhaust state remedies for this argument because he failed to satisfy the

"fair presentation" component of the exhaustion requirement. Nevertheless, the court will

consider the merits of McNally's instant argument because the State's concession of adjudication

---

[11]For instance, on direct appeal, McNally argued that the trial court violated Delaware law by allowing the State to present Foster's expert testimony without also requiring lab employee Barry to testify about the GSR testing, because Barry's testimony was needed to establish the veracity of the testing and to establish a crucial aspect of the chain of custody. (D.I. 4 at 11; D.I. 15, Appellant's Op. Br. in *McNally v. State*, No. 183, 2008 at 13); *see also McNally*, 980 A.2d at 370. The Delaware Supreme Court analyzed the argument under the Delaware caselaw applicable to chain of custody evidentiary issues, and held that Foster's expert testimony was admissible despite Barry's failure to testify. *See McNally*, 980 A.2d at 371. In contrast, however, McNally explicitly raised on direct appeal an argument that his right to confront witnesses was violated when a ballistics expert, Carl Rone, was unable to recall specific details about markings on the shell casings, and the Delaware Supreme Court explicitly considered this argument as asserting a violation of McNally's Sixth Amendment rights under the Confrontation Clause. *See McNally*, 980 A.2d at 368-70.

Thereafter, in his Rule 61 motion, McNally argued, *inter alia*, that the trial court erred when it admitted the GSR evidence because there was a chain of custody failure, and that appellate counsel was ineffective for failing to argue that the GSR evidence should not have been admitted during the trial because of the same chain of custody issue. *See McNally*, 2011 WL 7144815, at *3-5. The Superior Court denied as procedurally barred McNally's "chain of custody/erroneous admission of the GSR" argument because the issue had been denied on direct appeal. *Id.* The Superior Court also denied as meritless McNally's argument that appellate counsel was ineffective for failing to raise on direct appeal the "chain of custody/erroneous admission of the GSR" issue because appellate counsel actually did raise that issue on appeal. *Id.* When McNally appealed the Superior Court's decision, he cited *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) and argued that the Delaware Supreme Court should review his GSR evidence/chain of custody argument under Rule 61(i)(5)'s miscarriage of justice exception to the procedural bar rule because his Sixth Amendment rights had been violated due to his inability to cross-examine Michelle Barry. (D.I. 15, Opening Brief Case Number 631, 2011 Filing ID 41671441, at 15) The Delaware Supreme Court rejected this argument and affirmed the Superior Court's decision, explicitly holding that "the Superior Court did not err when barring McNally's evidentiary claims as formerly adjudicated." *McNally*, 2012 WL 3552923, at *2. Also on post-conviction appeal, McNally asserted that appellate counsel provided ineffective assistance by failing to argue on direct appeal that McNally's Sixth Amendment rights were violated because trial counsel did not cross-examine Barry. (D.I. 15, Opening Brief, Case Number 631, 2011, at 15) The Delaware Supreme Court rejected this argument because McNally did not "demonstrate that he was prejudiced as a result of any alleged ineffective assistance of his trial and/or appellate counsel." *See McNally*, 2012 WL 3552923, at *2.

constitutes an express waiver of the nonexhaustion defense. *See Sharrief v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009)("[B]y conceding exhaustion in its answer to Sharrieff's habeas petition, the State clearly, explicitly, and unambiguously waived the exhaustion requirement.").

The threshold question for Confrontation Clause claims is whether the challenged statement is testimonial. *See Davis v. Washington,* 574 U.S. 813, 821 (2006). "If it is not, the the Confrontation Clause has no application." *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

The State contends that McNally cannot establish the Delaware Supreme Court's decision was contrary to, or an unreasonable application, Supreme Court precedent because there is no clearly established Federal law governing the instant issue. The court concurs with the State's assertion that McNally's instant claim does not warrant habeas relief, but disagrees with the State's contention that there is no "clearly established Federal law" governing this particular issue. "Clearly established Federal law" for the purposes of the habeas statute is the law at the time of the last state-court adjudication on the merits of the petitioner's claim. *See Greene v. Fisher*, 132 S.Ct. 38, 43-45 (2011). Here, the last state-court adjudication of the merits the chain-of-custody issue actually raised by McNally occurred on direct appeal to the Delaware Supreme Court. However, as explained above, the court must view the Delaware Supreme Court as having adjudicated McNally's instant Confrontation Clause claim on direct appeal. As a result, the court will treat the Delaware Supreme Court's decision on direct appeal as the last state-court adjudication of the instant Confrontation Clause argument.

Although determining if certain types of statements are "testimonial" and fall within the scope of the Confrontation Clause is an area of continuing jurisprudential development, the relevant Supreme Court authority governing "testimonial" statements at the time the Delaware Supreme Court considered McNally's argument regarding Foster's expert testimony regarding

the GSR test results consisted of *Crawford v. Washington* and *Melendez–Diaz v. Massachusetts,* 557 U.S. 305 (2009).[12] In *Crawford,* the Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated by the admission of testimonial statements of a witness who was not subject to cross-examination at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 56. Although *Crawford* did not identify a definitive class of testimonial statements, the Supreme Court did identify "various formulations" of testimonial hearsay, which generally include the following:

> [*E*]*x parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford,* 541 U.S. at 51–52.

Subsequently, in *Melendez–Diaz,* the United States Supreme Court held that the specific expert analyst's report and "certificates of analysis" in that case were "functionally identical" to a testimonial statement under *Crawford,* and were therefore not admissible when the expert who prepared the report did not appear at trial and the defendant did not have a prior opportunity for cross-examination. *Melendez–Diaz,* 557 U.S. at 310–11. However, the *Melendez-Diaz* Court did not hold that all forensic reports fall into the same category. Rather, the introduction of the particular "certificates of analysis," or sworn affidavits, in *Melendez-Diaz* violated the Confrontation Clause because they were sworn declarations of fact made for the purpose of

---

[12]The Supreme Court decided *Melendez-Diaz* on June 25, 2009, and the Delaware Supreme Court issued its decision affirming McNally's convictions and sentence three months later, on September 28, 2009.

proving a fact. *Id.* at 311. The Supreme Court viewed the sworn affidavits as "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination," and held that the analysts who prepared the affidavits were witnesses subject to confrontation by the defendant. *Id.* at 311, 324.

After viewing Foster's expert testimony about the GSR evidence within the aforementioned framework, the court concludes that McNally's Confrontation Clause claim does not warrant habeas relief. In this case, the police sent gunshot residue samples taken from McNally's hands and from the SUV McNally had been driving to the R.J. Lee Group, a private Pennsylvania laboratory, for analysis. (D.I. 15, State's Ans. Br. in *McNally v. State*, No. 183, 2008 at 19) Michelle Barry, an employee of R.J. Lee, physically removed the eight vials of gunshot residue from a storage locker and placed them on the Scanning Electron Microscope (SEM) stage for overnight analysis, along with known control sample vials. The SEM process is automated once the "run" button on SEM apparatus is pressed, and any tampering with the SEM process can be detected. *Id.* at 19-21. At the end of the SEM process, the machine prints out micro-images of the particles found. *See McNally*, 980 A.2d at 371.

After the SEM printed out the test results, Elana Foster, the manager of the Forensic Science Department at the R.J. Lee Group, and another lab analyst, Dave Freehling, each analyzed the machine results separately to verify the existence of gunshot particles such as lead and barium. (D.I. 15, State's Ans. Br. in *McNally v. State*, No. 183, 2008 at 19-20) The lab typically has two analysts review the test results because they testify in court and are often in different states, and having two analysts familiar with each case means there are two people available to testify. (D.I. 15 App. to State's Ans. Br. in *McNally v. State*, No. 183, 2008, at B-54)

21

During the trial, Foster testified that, in her expert opinion, the gun shot residue on

McNally's hands indicated that he either fired a gun, was near a gun when it was fired, or came

into contact with a person or object that had gunshot residue on it. *See McNally*, 980 A.2d at

366-67. Foster's opinion was based on her independent review of the GSR SEM test results.

Barry did not testify, and Foster explained that Barry's part in the testing consisted of placing the

GSR vials on the SEM and turning the machine on. Foster also explained that she had trained

Barry, and that there was no reason to believe the standard operating procedure was not

followed. *See id.* at 371.

As explained by the Supreme Court in *Melendez-Diaz*, "we do not hold, and it is not the

case, that anyone whose testimony may be relevant in establishing the chain of custody,

authenticity of the sample, or accuracy of the testing device, must appear in person as part of the

prosecution's case." *See Melendez-Diaz*, 557 U.S. at 311 n.1; *see also United States v. Ortega*,

750 F.3d 1020, 1025 (8th Cir. 2014)("chain of custody alone does not implicate the Confrontation

Clause"). Therefore, to the extent Barry's absent testimony amounted to chain of custody

evidence, the court concludes that the admission of Foster's expert testimony did not violate

McNally's rights under the Confrontation Clause.

In turn, even if Barry's absent testimony did not constitute chain of custody evidence, the

court still concludes that the admission of Foster's expert opinion about the GSR test results did

not violate McNally's rights under the Confrontation Clause. Barry's work, which included

starting the SEM apparatus to collect test results, was ministerial in nature, and the SEM GSR

test results were "raw data," or "pure instrument read outs" that did not amount to a testimonial

statement by Barry. *See United States v. Summers*, 666 F.3d 192, 202 (4th Cir. 2011); *United

States v. Moon*, 512 F.3d 359 (7th Cir. 2008). Barry did not compile a report or conduct any

analysis of the data produced by the SEM GSR test, and the only testimony Foster provided regarding Barry related to Barry's limited ministerial role in removing the GSR vials from storage and placing them on the SEM in numerical order. (D.I. 15, State's Ans. Br. in *McNally v. State*, No. 183, 2008, at 20) In this case, because Foster, not Barry, conducted the actual analysis at issue and prepared the report containing her conclusions, Foster was the analyst whom McNally had a right to confront. Foster testified as to her own independent conclusions about the SEM GSR test results, and McNally had the opportunity to cross-examine Foster about those conclusions. In these circumstances, the absence of Barry's testimony did not amount to a violation of the Confrontation Clause. *See United States v. Boyd*, 686 F. Supp. 2d 382, 386 (S.D.N.Y. 2010)("where the defendant had ample opportunity to confront the Government witness who undertook the final, critical stage of the DNA analysis, and where that witness was personally familiar with each of the prior steps, testified that the analysis included safeguards to verify that errors would not result in a false positive, and demonstrated that the prior steps were essentially mechanical in nature, the Confrontation Clause is satisfied.")

Accordingly, the Delaware Supreme Court's decision affirming the trial court's admission of Foster's GSR expert testimony was neither contrary to, nor an unreasonable application of, *Crawford* and *Melendez-Diaz*.

### D. Claim Four: Confrontation Clause Violation Resulting From Absence Of Non-Expert Witness Testimony

In his final claim, McNally contends that his Sixth Amendment right to confrontation was violated when out-of-court statements made by two of the witnesses who were in the house at 82 Strawberry Drive at the time of the shooting (Dale Hall and Shelley Stanley) were admitted even though they did not testify at his trial. The Delaware Supreme Court denied this argument as

meritless after determining that the record did not support his contention that the trial court admitted prior out-of-court statements made by Hall and Stanley. *See McNally*, 2012 WL 3552923, at *2. Given this adjudication, McNally will only be entitled to relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established federal law governing the instant argument is *Crawford* and its progeny. To reiterate, in *Crawford*, the Supreme Court held that prior out-of-court testimonial statements by a witness are inadmissible unless the witness is available for cross-examination. *See Crawford*, 541 U.S. 36.

The Delaware Supreme Court's denial of claim four was not contrary to *Crawford*, because that court cited to Delaware precedent which, in turn, relied on *Crawford*. The Delaware Supreme Court's decision also did not involve an unreasonable application of *Crawford*. Given McNally's failure to provide clear and convincing evidence to the contrary, the court accepts as correct the Delaware Supreme Court's factual determination that no prior out-of-court statements of the two non-testifying victims were admitted into evidence. In turn, because Hall and Stanley's out-of-court statements were not entered into evidence, McNally's Sixth Amendment right to confront Hall and Stanley was not triggered. Therefore, the Delaware Supreme Court's denial of the instant argument does not warrant relief under § 2254(d).

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district

24

court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that McNally's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, McNally's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.